STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. W. CURTIS GROTHMANN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 8, 1952—Decided January 2, 1953.

192

Before Judges McGEEHAN, BIGELOW and JAYNE.

*Mr. Louis Winer* argued the cause for appellant.

*Mr. John D. Collins,* Morris County Prosecutor, argued the cause for respondent.

The opinion of the court was delivered by
JAYNE, J. A. D. On January 18, 1952 the grand jury of the County of Morris presented to the court two indictments against the defendant with which we are presently concerned,

designated as Nos. 47 and 48. Indictment No. 47 in the first count alleged that the defendant on November 1, 1950 in the Town of Boonton did induce a female child therein named of the age of 12 years to submit to the doing of an act which would tend to debauch the child and to impair her morals by placing his hand under her clothing and upon the private parts of her body contrary to the provisions of *N. J. S.* 2*A* :96–3. The second count charged the defendant with the commission on the same date of an assault and battery upon the child. Indictment No. 48 alleged in the first count the commission on the same date of the same immoral offense by the defendant with another female child therein named of the age of nine years. There was in this indictment also an accusation of assault and battery. At the inception of the trial the citation in the indictments of the statute relating to the alleged debauching of the child was changed without objection to indicate *R. S.* 2 :117–6.1, which was the statute in effect at the time of the alleged commission of that offense. *Vide, Rule* 2 :4–11(*a*).

At the trial the testimony of the two children disclosed without objection the recurrent commission by the defendant of such unlawful practices at intervals over a period of the two preceding years. Consequentially at the conclusion of the introduction of the evidence on behalf of the State and in pursuance of the application of the county prosecutor, indictment No. 47 was amended to allege the occurrence of the offense on a date between April 1, 1951 and May 8, 1951, and incidentally to change the statement of the age of the child to ten years. Indictment No. 48 was also amended to place the commission of the offense therein alleged on a date between November 1, 1950 and May 8, 1951. Counsel for the defendant interposed timely objections to the allowance of those amendments.

Ultimately, the counts charging the defendant with assault and battery were dismissed and the jury found the defendant guilty on the first counts of indictments No. 47 and No. 48. The defendant was sentenced to confinement in the State

Prison for a minimum term of one year and a maximum term of one and one-half years on each indictment, with the direction that the sentences be served concurrently.

In the prosecution of the present appeal counsel for the defendant invites our attention to: (1) the allowance of the amendments of the indictments, (2) a feature of the court's charge to the jury, (3) the omission to charge a request, and (4) the alleged discordance between the verdict and the weight of the evidence.

In approaching the consideration of the allowance of the amendments it is of some precursory significance to notice that no objection whatever was interposed to restrain the infant witnesses during their interrogation from freely disclosing the many unlawful indulgences of the defendant over a relatively lengthy period, without restriction to the date specified in the indictments. The cross-examination was correspondingly comprehensive.

It must be recognized that the date of the commission of the particular misdemeanor alleged in the indictments (*R. S.* 2:117–6.1), except it be comprehended by the statute of limitations, is formal and not a legal and essential constituent of the offense. *State v. Shapiro,* 89 *N. J. L.* 319 (*E. & A.* 1916); *State v. Yanetti,* 101 *N. J. L.* 85 (*E. & A.* 1925); *State v. Butler,* 7 *N. J. Misc.* 868 (*Sup. Ct.* 1929), reversed on other grounds, 107 *N. J. L.* 91 (*E. & A.* 1930). The indictments therefore were not insufficient in that they originally stated the time imperfectly. *R. S.* 2:188–5; *Rule* 2:4–13.

It is also to be observed that as amended the indictments alleged the commission of the offense *"on a date between * * *"* Thus, neither indictment charged the occurrence of more than one offense. Contrast, *State v. Sing Lee,* 94 *N. J. L.* 266 (*E. & A.* 1920); *State v. Brown,* 103 *N. J. L.* 519 (*Sup. Ct.* 1927).

Additionally, the trial judge commented upon the amendments in his charge to the jury and expressly informed the jurors that "* * * the Prosecutor is tied down to a proof

of crime as charged in the indictment *to a date* which falls within those dates as I outlined them." It also appears that the amendments were reduced to writing, comprising an exhibit in evidence to which the attention of the jury was specifically directed.

While counsel for the defendant argumentatively resisted the motion to amend the indictments, it is not apparent that any request for either a mistrial or a reasonable recess in the course of the trial was made and denied.

It is not evident that the defendant's substantial rights were prejudicially affected by an error in the allowance of the amendments.

Our consideration turns next to those alleged inaccuracies in the diction of the judge's charge to the jury. Parenthetically it may be said that the excerpts taken from the charge presently to be reproduced have some relevancy also to the point previously discussed.

The clauses of the charge subjected to criticism are:

"* * * your sole duty is to determine whether a crime *of the nature* complained of in the indictment occurred on that day.

* * * * * * * *

In other words, in one sentence, you will take these indictments and their amendments with you to the jury room and you are to determine whether *a* crime was committed in so far as each of these three girls is concerned on a date within the period covered by the amended indictments * * *." (Italics indicates root of criticism.)

Initially it is discovered that in the deliverance of the charge the trial judge read to the jury in full the section of the statute three times.

 It is elementary that although sentences in a charge may, if read apart from their connection, need some qualification to render them accurate, yet if the qualification is so manifested in the context that the jury cannot reasonably be deemed to have been misled by the charge, taken in its entirety, there is no error. Somewhat differently phrased, the rule is that if in his charge to the jury the judge uses a word or a phrase the very opposite of which he intends, and

his true intent and meaning are to be gleaned from the other parts of the charge, and if upon consideration of the entire charge the jury cannot reasonably be thought to have been misguided, no reversible error thereby exists. *State v. Timmerari*, 96 *N. J. L.* 442 (*E. & A.* 1921); *State v. Giberson*, 99 *N. J. L.* 85 (*E. & A.* 1923); *State v. Guarino*, 105 *N. J. L.* 549 (*E. & A.* 1929).

Illustrative is the reproduction here of the entire paragraph in which the phrase "a crime of the nature complained of in the indictment" was used:

"Now, to be more specific, the indictment as amended concerning Joan covers the date from April 1, 1951 to May 8, 1951 and your sole duty is to determine whether a crime of the nature complained of in the indictment occurred on that day; not some other date, but whether a violation of this particular statute in so far as Joan is concerned occurred on a date between April 1, 1951 and May 8, 1951, a seven or eight week period, whatever it is, and likewise insofar as the indictment concerning Patricia is concerned, it is your duty to determine whether the defendant committed a violation of this criminal statute on a date between April 1, 1951 and May 8, 1951, not some prior date, because the Prosecutor is tied down to a proof of crime as charged in the indictment to a date which falls within those dates as I outlined them."

So, too, the clause "whether a crime was committed * * * on a date within the period covered by the amended indictments," when read in its contextual situation, rationally referred to *the crime* alleged in the amended indictments.

Assuredly any momentary doubt concerning the expression "a crime" was immediately dispelled by the succeeding instruction:

"In so far as the indictment concerning (J. S.) is concerned, return a verdict of guilty or not guilty *on that indictment as amended.* * * * In so far as *the indictment concerning* (K. B.) is concerned, that is the one, you remember, where there are three separate paragraphs, and you will call each paragraph a separate count and you will have to return a separate verdict on each count, guilty or not guilty on the first count, guilty or not guilty on the second count, guilty or not guilty on the third count. I am referring to the indictment on (K. B.) and I state to you once again that I have removed

from your consideration the charges concerning assault and battery and you can forget about that. They are not before you for consideration."

No objection was made at the trial to those *lapsi linguae* of the trial judge. *Rules* 2:7–8(*b*); 4:6–2. It is not apparent that the defendant thereby suffered manifest wrong or injury. *Rules* 1:2–19(*a*); 4:2–6.

It was the policy, as previously stated, of counsel for the defendant voluntarily to permit the infant witnesses to divulge all of their information remotely or incidentally relating to their associations with the defendant. Early in the trial he announced: "* * * I am not going to be put in a position that I am objecting to a child's testimony." "I am not objecting to this testimony. I am letting everything in." And so, apparently, most everything did. Such a course was evidently deemed advantageous to the defendant, and perhaps it was.

Counsel, however, submitted to the court a request to charge "that any conversations held by the three children, either among themselves or with their parents and not in the presence of the defendant, are not binding upon the defendant." The judge in the circumstances ignored the request. to which omission objection was registered.

█ It is obvious that any prejudicial influence emanating from such testimony which the defendant incurred was voluntarily occasioned by his acquiescence in the introduction of the testimony, and it is therefore not apparent that the failure of the court to comply with the request to charge constituted a material invasion upon or impairment of his substantial defensive rights. It was not an error justifying a reversal.

██ The determination of the guilt or innocence of the defendant was fairly delegated to the judgment of the jury. In the exercise of our purely supervisory and remedial appellate function we are not empowered arbitrarily to substitute our judgment for that of the jury. Its members were the critics of the credibility of the testimony and the judges

entrusted with the determination of the defendant's guilt or innocence. Their resolution, where, as here, it does not clearly and convincingly appear to have been the result of mistake, partiality, prejudice or passion, should be respected. *Rules* 1:2–19; 4:2–6.

Affirmed.